THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
ELKINS

**THE CONSTITUTION PARTY OF
WEST VIRGINIA, DENZIL W. SLOAN,
and JEFF BECKER,**

    **Plaintiffs,**

v.                                                                                    **Civil Action No. 2:08-CV-61
(Judge Bailey)**

**FRANK JEZIORO, Director of the West
Virginia Division of Natural Resources,
SAM ENGLAND Superintendent of Stonewall
Jackson Lake State Park, SCOTT WARNER,
and JOHN DOES 1 and 2.**

    **Defendants.**

## ORDER AWARDING ATTORNEY FEES

The above-styled case is presently before the Court on plaintiffs' Motion for Attorney Fees [Doc. 33], defendants' Response and Supplemental Response [Docs. 36, 41], Plaintiffs' Reply [Doc. 42], and defendants' Response to Plaintiffs' Affidavits in Support of Attorney Fees and Expenses [Doc. 43]. After reviewing the record and the arguments of the parties, this Court finds that plaintiffs' Motion for Attorney Fees [Doc. 33] should be **GRANTED**.

## BACKGROUND

On April 18, 2008, plaintiffs filed suit in the Northern District of West Virginia alleging violations of their rights under the First and Fourteenth Amendments to the United States Constitution, and their rights under Article III, Sections 1, 3, and 7 of the West Virginia Constitution. [Doc. 1]. Plaintiffs brought suit against defendants: Frank Jezioro, Director of

1

West Virginia Division of Natural Resources; Sam England, Superintendent of Stonewall Jackson Lake State Park; and Scott Warner, all in their individual and official capacities as officers and employees of the State of West Virginia. ([Doc. 1] ¶¶ 5-8).

On May 29, 2008, defendants Frank Jezioro, Sam England, and Scott Warner, filed, by counsel, a Motion to Dismiss in Lieu of Answer [Doc. 9], and accompanying Memorandum [Doc. 10]. On January 16, 2009, this Court granted in part and denied in part defendants' motion to dismiss [Doc 23]. Specifically, the Court granted defendants' motion to dismiss plaintiffs' state law claims for injunctive or declaratory relief, but denied defendants' motion as to all other claims.

On March 16, 2009, plaintiffs filed a Motion for Judgment on the Pleadings or Summary Judgment [Doc. 24]. On June 3, 2009, this Court granted in part and denied in part plaintiffs' motion [Doc. 24]. The Court granted in part plaintiffs' motion, finding the "solicitation" provision of West Virginia Code of State Rules § 58-31-2.16 facially unconstitutional. ([Doc. 24] at 27]. The Court denied in part plaintiffs' motion, finding the Court did not need to reach plaintiffs' "as applied" claim. (Id. at 10, 27). In ruling on the motion for summary judgment, the Court did not issue a final order, allowing the parties to address any unresolved issues.

On July 9, 2009, the parties, by counsel, came before the Court for a status conference. [Doc. 39]. At the conference, plaintiffs indicated the only remaining issue was plaintiffs' motion for attorney fees [Doc. 33]. Defendants argued the motion was premature as a final order had not yet been entered. The Court, finding that no further issues remained in the case, set a briefing schedule for the motion for attorney fees. [Doc. 39].

On June 16, 2009, plaintiffs filed a Motion for Attorney Fees [Doc. 33]. In their

2

motion, counsel for plaintiffs requested the Court to enter an order pursuant to Federal Rule of Civil Procedure 58, incorporating the order and relief granted in the Court's June 3, 2009, summary judgment order and awarding plaintiffs nominal damages of $1 against defendants Sam England and Scott Warner, jointly and severally. ([Doc. 33] ¶ a). Additionally, plaintiffs requested the Court grant plaintiffs attorney fees pursuant to 42 U.S.C. § 1988 and Federal Rule of Civil Procedure 54(d). (Id. ¶ b). Counsel for plaintiffs estimated their attorney fees at the time the motion was filed to be $36,014.37. (Id.)

On June 30, 2009, defendants filed a response [Doc. 36]. In the response defendants argued a final order should not be entered as plaintiffs' "as applied" claim, and request for injunctive relief remain. (Id. at 2). Defendants then went on to address whether plaintiffs are entitled to an award of attorney fees. Defendants argue plaintiffs should not be awarded attorney fees because "[i]n order to qualify as a prevailing party, a civil rights plaintiff must obtain at least some relief on the merits of his claim"; and "nothing in this Court's June 3, 2009 *Order* 'materially alters the legal relationship' between the Plaintiffs and the Defendants by 'modifying the defendants' behavior in a way that directly benefits the Plaintiff[s]'" ([Doc. 36] at 6 (citing **Farrar v. Hobby**, 506 U.S. 103, 111-12 (1992))). Additionally, defendants argue "[b]ecause the Plaintiffs asked for both actual and nominal damages and due to the fact that this Court's June 3 *Order* did not specifically grant any type of damages to the Plaintiffs, they cannot be considered a 'prevailing party' for the award of attorney's fees." (Id. at 8). Finally, with regard to the amount of the fee, defendants argue "the fees sought are not legally or factually supported." (Id. at 10).

On July 17, 2009, defendants filed a Supplemental Response to Plaintiffs' Motion for Attorney Fees [Doc. 41]. In the response, defendants again argue that plaintiffs are not

3

the prevailing party because they only succeeded on two out of the five claims for relief requested. ([Doc. 41] at 4). Specifically, defendants argue plaintiffs failed with respect to: (1) the "as applied" claim, (2) their request for an injunction, and (3) their request for an award for actual damages. Defendants reason that "if Plaintiffs had succeeded on their 'as applied' challenge to the rule, *or* if they would have received an 'injunction' against the Defendants, the legal relationship between the parties would definitely have been materially altered and in turn would have modified the Defendants' behavior which would have directly benefited (sic) the Plaintiffs (sic) rights." ([Doc. 41] at 5) (emphasis in original). Defendants then assert that "the relationship was not modified by the striking of the word 'solicitation'" and "[a]s there are not actual damages, Plaintiffs cannot be considered a 'prevailing party' in order to be awarded attorneys' fees pursuant to 42 U.SC. (sic) § 1988." ([Doc. 41] at 8 (citing **Carey v. Piphus**, 435 U.S. 247, 266 (1978); **Farrar v. Hobby**, 506 U.S. 103, 111-12 (1992))).

On July 24, 2009, plaintiffs filed a Reply in Support of Plaintiffs' Motion for Attorney Fees [Doc. 42]. In support of plaintiffs' argument for an entry of a final order of judgment, plaintiffs note that the Court found it unnecessary to address plaintiffs' "as applied" claims in light of the facial unconstitutionality of the statute. Plaintiffs also noted the Court's June 3, 2009, Order "resulted in an order that forbids the Defendants from enforcing the regulation that was the basis for the Defendants' interference with Plaintiffs' petitioning activities (Doc. No. 31, p. 27), which is the ultimate result sought by the Plaintiffs." ([Doc. 42] at 1). Plaintiffs then argue, with respect to nominal damages, that defendants' claim that this Court's ruling did not materially alter the relationship between the parties because it did not find each and every word of the statute unconstitutional is untenable and

4

unsupported by law. (Id. at 2). Specifically, plaintiffs point to the fact that defendants used the "solicitation" provision to stop plaintiffs' petitioning activities, and, therefore, defendants could no longer restrict plaintiffs' activities using that portion of the statute. (Id. at 3). Plaintiffs note that "a § 1983 plaintiff is entitled, at a minimum, to nominal damages if a defendant is determined to have deprived the plaintiff of federally-protected rights." (Id.)(citing **Wright v. Collins**, 766 F.2d 841, 850 (4th Cir. 1985)).

With regard to the award of attorney fees, plaintiffs argue that they are in fact the 'prevailing party' under 42 U.S.C. § 1988 as they received the primary relief they sought: a declaration that the rule that was used to deny them the ability to engage in petitioning activities was unconstitutional and an order enjoining defendants from enforcing the portion of the rule which applied to petitioning activities. ([Doc. 42] at 3). Plaintiffs also submitted to the Court affidavits in support of the rate and time calculation for fee awards. A brief summary of the information is as follows:

<u>Joseph A. Wallace</u>: Joseph Wallace has been practicing law for 40 years in several jurisdictions. He is regularly engaged in the practice of law the equivalent of six days a week, and the majority of his business comes from fee paying clients. Joseph Wallace requests a fee of $275.00 per hour. He also avers that he spent 79.80 hours working on the above-styled case.

<u>John J. Wallace IV</u>: John Wallace has been practicing law for 5 years in the state of West Virginia. He is regularly engaged in the practice of law the equivalent of six days a week, and the majority of his business comes from fee paying clients. John Wallace requests a fee of $195.00 per hour. He also avers that he spent 14.50 hours working on the above-styled case.

Douglas R. McKusick: Douglas McKusick has been practicing law for 25 years in the District of Columbia, and in Virginia for 3 years. He is regularly engaged in the practice of law as a staff attorney at the Rutherford Institute, a non-profit corporation which specializes in constitutional cases. Douglas McKusick requests a fee of $200-250 per hour. He also avers that he spent 72.3 hours working on the above-styled case.

## CITATION TO AUTHORITY

### II.     Nominal Damages

This Court finds an award of nominal damages is unwarranted in the case at bar. Nominal damages must be awarded in an action under 42 U.S.C. § 1983 whenever a plaintiff proves they were deprived of a constitutional right. **Norwood v. Bain**, 143 F.3d 843, 856 (4th Cir. 1998), *vacated*, 166 F.3d 243 (4th Cir. 1999) (but *en banc* Fourth Circuit determined that it was an abuse of discretion to refuse to award nominal damages where plaintiffs showed violation of a constitutional right). Here, however, the Court only addressed plaintiffs' facial challenge to the statute. As the Court did not reach the facts of the case, except as to establish standing, an award of nominal damages would be inappropriate.

### II.     Final Judgment

On June 3, 2009, this Court granted plaintiffs' Motion for Summary Judgment but did not enter a final order pursuant to Federal Rule of Civil Procedure 58. [Doc. 31]. On June 16, 2009, plaintiffs filed a motion requesting nominal damages. [Doc. 33]. Additionally, at the Status Conference on July 9, 2009, plaintiffs represented to the Court that they did not intend to pursue the "as applied" claims as they could obtain no further relief. Accordingly,

this Court finds that entry of final judgment according to Rule 58 is proper and **ORDERS** that the Clerk enter a final judgment order in this case encompassing the relief set out by the Court in it's June 3, 2009 Order [Doc. 33].

## III.     Attorney Fees

### A.     Standard

United States Code, Tile 42, Section 1988 provides: "[i]n any action or proceeding to enforce a provision of [42 U.S.C. § 1983], the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."  The purpose of § 1988 is to ensure effective access to the judicial process for persons with civil rights grievances without simultaneously producing windfalls to the attorneys." ***Trimper v. City of Norfolk, Va.***, 58 F.3d 68, 73 (4th Cir. 1995), *cert denied*, 516 U.S. 997 (1995).  "Accordingly, a prevailing plaintiff 'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.'" ***Spell v. McDaniel***, 852 F.2d 762, 765 (4th Cir. 1988) (quoting ***Hensley v. Eckerhart***, 461 U.S. 424, 429 (1983) (citing S.Rep. No. 94-1011, p.4 (1976))).  The burden of proving entitlement to such an award falls, however, on the applicant. ***Hensley***, 461 U.S. at 437.  Whether to grant a request for an award of fees pursuant to 42 U.S.C. § 1988 "lies within the court's broad discretion, provided the court 'demonstrated a carefully reasoned analysis of both the factual circumstances and relevant legal precedents.'" ***West Virginians for Life, Inc. v. Smith***, 952 F. Supp. 342, 344 (S.D.W.Va. 1996) (quoting ***Cooper v. Dyke***, 814 F.2d 941, 950 (4th Cir. 1987)).

In order to qualify as a prevailing party under 42 U.S.C. § 1988, "a civil rights plaintiff must obtain at least some relief on the merits of his claim.  The plaintiff must obtain an

enforceable judgment against the defendant against whom fees are sought[.]" **Farrar v. Hobby**, 506 U.S. 103, 111 (1992); see also **Hensley v. Eckerhart**, 461 U.S. 424, 433 (1983) (stating "[p]laintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit."). A plaintiff who obtains prospective relief against a state officer in his or her official capacity is a prevailing party for purposes of an award of attorney fees under 42 U.S.C. § 1988. **Missouri v. Jenkins by Agyei**, 491 U.S. 274, 279 (1989); see also **West Virginians for Life, Inc. v. Smith**, 952 F. Supp. 342, 344 (S.D.W.Va. 1996) (plaintiffs who obtained declaratory and injunctive relief in challenge to constitutionality of state statute were prevailing parties under § 1988).

Here, it is clear that plaintiffs are the prevailing party as they challenged the constitutionality of W.Va. Code of State Rules § 58-31-2.16, and this Court held the solicitation provision of the statute unconstitutional, struck the provision from the statute, and enjoined defendants from enforcing that provision of the regulation. ([Doc. 31] at 27). See **West Virginians for Life**, 952 F. Supp. at 344. Defendants' arguments that the relief granted by this Court does not alter the legal relationship between the parties is unfounded. Defendants can no longer rely upon the solicitation provision of W.Va. Code of State Rules § 58-31-2.16 to prevent plaintiffs' petitioning activities. Additionally, defendants argue they could rely on other provisions of the statute to prohibit the petitioning activities of plaintiffs in the future. To the extent that defendants intend to rely on other provisions of the statute for that purpose, the Court would note, as explained more fully in this Court's previous order [Doc. 31], a statute which grants unbridled discretion to a government official to deny permits to engage in First Amendment expression in a public forum, and which contains

no objective standards from which to review any permit denials is an unconstitutional prior restraint on First Amendment expression. What defendants choose to do with that information is up to them.

B. Computation of Fee

"The 'critical inquiry' in fee setting requires a determination of a reasonable rate of compensation in accordance with the factors articulated in ***Johnson v. Georgia Highway Express***, 488 F.2d 714 (5th Cir.1974) and a subsequent multiplication of that rate by the number of hours reasonably expended. This process produces the 'lodestar' figure that is presumptively a reasonable fee without further adjustment. ***Blum***, 465 U.S. at 897." ***Lewis v. J.P. Stevens & Co.***, 849 F.2d 605, *2 (4th Cir. 1988). The ***Johnson*** are as follows:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to properly perform the legal service; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

***Daly v. Hill***, 790 F.2d 1071, 1076 n.2 (4th Cir. 1986) (citing ***Johnson***, 488 F.2d at 717-19). The Court will address each loadstar factor in turn:

1. Time and Labor Expended

It is up to the fee applicant to establish the number of hours worked. ***Hensley***, 461

9

U.S. at 437. "The number of hours must obviously be adjusted to delete duplicative or unrelated hours. At bottom, the number of hours must be reasonable and must represent the product of 'billing judgment.'" **Run Creek Coal Sales, Inc. v. Caperton**, 31 F.3d 169, 174 (4th Cir. 1994) (quoting **Hensley**, 461 U.S. at 437).

Here, each attorney has provided the Court with a detailed time sheet including the number of hours worked and a brief description of the work done. [Docs. 42-1, 42-2, 42-3]. Defendants contend that the hours billed are excessive. ([Doc. 43] at 8-9). Specifically, defendants note that about 80% of the hours expended by Attorney McKusick were spent on motion practice, in contrast with the 57% of the hours expended by Attorney Joseph Wallace in reviewing things in the case, and the 19% spent in drafting correspondence to Attorney McKusick and counsel for defendants. (Id.)

The Court has reviewed the time sheets and judging by the hours this Court has spent reviewing the pleadings in this case, the Court finds the hours of Attorney Joseph Wallace appropriate. As local counsel, Joseph Wallace has an obligation to review all pleadings in the case, and it is reasonable that a person with expertise in constitutional matters, such as Attorney McKusick, would spend significantly less time reviewing the pleadings. Additionally, as local counsel, Joseph Wallace was an integral and necessary part of obtaining the result in this case. Defendants made no other objections to the hours claimed by Attorney McKusick and Attorney John Wallace. Thus, after careful review of the hours documented by all three attorneys, this Court finds that time sheets to include a reasonable number of hours expended under the facts and circumstances of his case.

### 2. The Novelty and Difficulty of the Questions

Attorney McKusick's practice deals mostly with civil rights and constitutional cases, focusing on cases involving First Amendment rights. Attorney Joseph Wallace has been practicing for 40 years. The above-styled case dealt with the constitutionality of a West Virginia statute, as well as qualified immunity. The Court concludes that the issues, while perhaps unique, did not present novel or difficult questions of law and that the outcome of the case was controlled by decisions similar to the facts and circumstances of the above-styled case. As such, the Court finds that plaintiffs are not entitled to an upward departure based on this lodestar factor, nor does this factor warrant a downward departure.

### 3. Skill Required to Perform Services Involved

This case primarily dealt with Fist Amendment rights, an area in which attorney McKusick specializes. As such, counsel for plaintiffs was adequately prepared to handle the constitutional issues. Additionally, Joseph Wallace's 40 years of litigation experience cannot be discounted by this Court. Undoubtedly, the broad array of issues Joseph Wallace has seen in his legal career assisted plaintiffs in obtaining the judgment in this action. The Court also finds that the hourly rates commanded by plaintiffs' counsel adequately reflect their level of expertise. *See* factor 5, *infra*.

### 4. Preclusion of Other Employment

All the attorneys involved in this case claim to have other cases they could have been working on, and getting paid for (either through fee paying clients or potential awards of attorney fees), but have not pointed to any particular case they were prevented from taking as a result of this litigation. Further, the Court notes the short duration of the above-

styled case weighs against any upward adjustment because if counsel for plaintiffs have been prevented from taking other cases, it has only been for a short period.  Accordingly, this Court finds that plaintiffs' speculative determination that other work was "lost" as a result of this case is insufficient to merit an upward adjustment of the lodestar in this case.

    5.    <u>The Customary Fee</u>

A fee award pursuant to 42 U.S.C. § 1988 is calculated according to the prevailing market rate.  **Blum v. Stenson**, 465 U.S. 886, 894 (1984).  The relevant "market area" is generally the area in which the prosecuting Court sits.  **National Wildlife Federation v. Hanson**, 859 F.2d 313 (4th Cir. 1988).  The determination of the prevailing market rate is fact intensive, and "is best guided by what attorneys earn from paying clients for similar services in similar circumstances.  While evidence of fees paid to attorneys of comparable skill in similar circumstances is relevant, so too is the rate actually charged by the petitioning attorneys when it is shown that they have collected those rates in the past from a client."  **Caperton**, 31 F.3d at 175 (internal citations omitted).  Should the fee applicant fail to supply the Court with such information, the Court may establish a reasonable rate based on its own knowledge and experience of the relevant market.  *See* **Caperton**, 31 F.3d at 179.

Here, plaintiffs have not submitted affidavits of other attorneys in the area. Plaintiffs have, however, provided the Court with their hourly billing rate (Attorneys Joseph Wallace and John Wallace) and evidence of fees awarded to them in similar cases (Attorneys Joseph Wallace and Douglas McKusick). Specifically, Joseph Wallace requests an hourly rate of $250.00.  He states in his affidavit that this is the hourly rate paid by clients who are

not indigent. He also notes that in 1994 he was awarded a fee of $225.00 per hour in the Western District of Texas, and in 2005 was awarded a fee of $225.00 per hour in the Circuit Court of Marshall County. Attorney McKusick notes that neither he nor the Rutherford Institute accept fees from clients they represent, and that he and the Institute are only able to represent clients on this pro-bono basis because of fee shifting statutes such as 42 U.S.C. § 1988. He also avers that attorneys for the Rutherford Institute have been awarded a billing rate of between $200.00 and $250.00 per hour. John Wallace states in his affidavit that his hourly rate is $195.00 per hour. He states in his affidavit that this is the hourly rate paid by clients who are not indigent.

The information provided by plaintiffs is not particularly comprehensive. As such, the Court has applied its knowledge of the relevant market, as well as reviewed other fee awards in similar cases in West Virginia. *See* **Anderson v. Penn National Gaming, Inc., et. al.**, 2007 WL 2750679 (N.D.W.Va. Sept. 19, 2007) (awarding contested fee of $250.00 per hour in FLSA case); **Claypool v. Barnhart**, 294 F.Supp.2d 829, 834 (S.D.W.Va. October 9, 2003) (awarding contingency fee in Social Security benefits case, but noting that counsel's usual hourly rate is $250.00 per hour); **Bostic, v. American General Finance, Inc.**, 87 F.Supp.2d 611, 618-20 (S.D.W.Va. 2000) (awarding contested fees of $250.00, $225.00, and $175.00 in TILA case); *See also* **Westfall v. Kendle International, CPU, LLC, et. al.**, 2008 WL 3852718 (N.D.W.Va. August 15, 2008) (awarding fees at uncontested hourly rates of $300.00, $250.00, and $150.00 in WCPA and FLSA case); **Moats v. City Hospital, Inc.**, 2007 WL 2220282 (N.D.W.Va. August 2, 2007) (awarding uncontested fee of $90.00 per hour in discovery dispute); **United States Vuyyuru v.**

*Jadhav, M.D.*, 555 F.3d 337, 357 (4th Cir. 2009) (affirming award of $310.00 per hour in Eastern District of Virginia FCA case); *Grissom, II v. The Mills Corp.*, 549 F.3d 313, 323 (4th Cir. 2008) (reversing and remanding, finding that district court abused its discretion in awarding fees at an hourly rate above $335.00 and $380.00 for partners, $180.00, $200.00, and $250.00 for associates in Eastern District of Virginia in Sarbanes-Oxley whistle-blower case); *Trimper v. City of Norfolk, Va.*, 58 F.3d 68, 75-76 (4th Cir. 1995) (affirming fee award of $100.00 per hour, where attorney requested fee of $215.00 per hour in Eastern District of Virginia in uncomplicated civil rights case); *West Virginia for Life*, 952 F.Supp. 342, 346-47 (S.D.W.Va. 1996) (awarding contested fees of $250.00, $170.00, $150.00, $110.00, and $100.00 in civil rights case); *Director, Office of Workers Comp. Prog.*, 974 F.2d 508, 512-513 (4th Cir. 1992) (awarding lump sum but noting requested fee of $167.00 per hour in black lung case before the Fourth Circuit and the United States Supreme Court).

This Court finds that the rates requested by attorneys Joseph Wallace and John Wallace are higher than the prevailing market rate. Specifically, the Court notes that Joseph Wallace who has a large amount of litigation experience, but no particular expertise in constitutional civil rights litigation is requesting a rate of $275.00, but Douglas McKusick whose entire practice is civil rights and constitutional litigation requests a rate of $200.00 to $250.00. Additionally, although Joseph Wallace attests that the rate of $275.00 is paid by those clients who are able, there is no indication that a plaintiff seeking to challenge the constitutionality of a state regulation would typically be a fee-paying client. As such, there is no indication that a constitutional case would command the same fee as a business

dispute. With regard to John Wallace, who requests a fee of $195.00, the Court finds the rate high based on his experience and the work performed in this action. In fact, all but about 2 ½ hours claimed by John Wallace were spent in preparing–but not drafting–the instant motion. Based on the foregoing, the Court finds that a reasonable hourly rate for Joseph Wallace is $215.00 per hour, and a reasonable hourly rate for John Wallace is $150.00 per hour.

The Court finds the requested hourly rate of Douglas McKusick to be in line with the prevailing market rate for similar cases. Specifically, the Court finds that his expertise and experience in constitutional issues merits a fee award of $250.00 per hour.

6. Whether the Fee is Fixed or Contingent

All attorneys state in their affidavits that they took the above-styled case on a contingency, meaning any fee award was contingent on plaintiffs prevailing and receiving a fee award pursuant to 42 U.S.C. §1988. As all attorneys put time and expense into the above-styled case with the risk that their efforts might never be compensated, this Court finds that this factor weighs in favor of counsel receiving compensation at the hourly rates set out above.

7. Time Limitations

Plaintiffs brought suit because they were prevented from petitioning to obtain signatures to get certain candidates added to the ballot for the 2008 election. At the time the suit was filed it was too late to obtain relief that would effect the 2008 election. However, counsel worked to obtain a speedy result and notified the Court at the outset of the litigation that there were no disputed issues of material fact, and as a result, plaintiffs

will have full opportunity to petition for the 2010 election ballot. As such, the Court finds this factor weighs in favor of counsel receiving compensation at the hourly rates set out above.

8. Amount Involved and Result Obtained

Plaintiffs obtained injunctive relief. Defendants make much of the fact that this Court declined to address plaintiffs' "as applied" claim, and that plaintiffs failed to obtain actual damages. This Court finds defendants' arguments unpersuasive. As set out in this Court's Order granting plaintiffs' injunctive relief, this Court found the statute facially unconstitutional and, thus, found that it did not need to reach plaintiffs' "as applied" challenge. Plaintiffs obtained the relief sought: a judgment that the challenged statute is unconstitutional, and an order enjoining defendants from enforcing the unconstitutional portion of the statute. As the Court's decision in this case was, however, dictated by controlling precedents similar to the case at bar, the Court finds that the results obtained do not merit an upward or downward adjustment of the lodestar.

9. Experience, Reputation and Ability of Attorneys

As discussed above factor 5, the Court finds the adjusted hourly rates adequately account for each attorney's experience, reputation, and ability.

10. Undesirability of the Case

The only 'undesirability' attested to by plaintiffs' counsel is the fact that the case is one taken on a contingency. Joseph Wallace notes that in several other cases he has worked on in conjunction with the Rutherford Institute no fees were awarded because the case settled prior to a final determination by the Court. In response, defendants note that

16

they have sought a settlement of the above-styled case, including attorney fees, prior to the time when much of the litigation expenses were incurred. The Court notes that plaintiffs might have incurred fewer expenses had the above-styled case settled, but the Court also notes that an attorney is bound to act in accordance with his clients wishes with regard to settlement. As such, this Court finds the 'undesirability' factor does not merit an upward or downward adjustment of the lodestar.

### 11. Nature and Length of Relationship with Client

Counsel for plaintiffs had no prior relationship with the plaintiffs in this case, but all note the importance of attorneys being willing to represent parties challenging constitutional violations. The Court finds that the adjusted rate as set out in factor 5 above, and the number of hours expended as discussed in factor 1 above, appropriately compensate for this factor and finds it does not merit an upward or downward adjustment of the lodestar.

### 12. Awards in Similar Cases

As discussed above factor 5, the Court finds the adjusted hourly rates will result in fee awards that are commiserate with fee awards in similar cases.

Based on the foregoing reasoning, the Court finds the lodestar fee of:

<u>Joseph Wallace</u>: 79.8 hours at $215 per hour =	$17,157.00

<u>John Wallace</u>: 14.5 hours at $150 per hour =	$2,175.00

<u>Douglas McKusick</u>: 73.75[1] hours at $250 per hour =	$18,437.50

_____

**$37,769.50**

The Court further finds that the costs and expenses claimed by plaintiffs for filing fees, phone calls, postage, copies, etc. are reasonable and awards plaintiffs **$462.87** in costs and expenses.

## **CONCLUSION**

Based on the foregoing, this Court finds that Plaintiffs' Motion for Attorney Fees [Doc. 33] should be **GRANTED** in part. The Court **ORDERS** as follows:

- A separate judgment order shall be **ENTERED** by the Clerk in accordance with the relief granted by this Court in its June 3, 2009 Order [Doc. 31].

- Plaintiffs are **AWARDED** attorney fees in the amount of **$37,769.50** and costs in the amount of **$462.87**. This fee award shall also be **ENTERED** by the Clerk in a separate judgment order.

Accordingly, the above-styled case is hereby **STRICKEN** from the active docket of

---

[1] The Court checked the hours as set out in the time sheets and found that the total for Douglas McKusick amounted to 73.75 hours, not 72.3 hours as stated in the affidavit. The Court modified the time accordingly.

18

this Court.

The Clerk is directed to transmit copies of this Order to all counsel of record herein.

It is so **ORDERED**.

**DATED:** August 31, 2009

JOHN PRESTON BAILEY
CHIEF UNITED STATES DISTRICT JUDGE